## CALAME *vs.* CALAME.

1. A divorce, *a vinculo*, obtained by the wife for the misconduct of her husband takes away her dower right.

2. Under the ninth section of the act concerning divorces, a gross sum may be decreed to be paid, or a specific portion and description of property be decreed to be conveyed or transferred to the wife for alimony and maintenance, in full discharge of her future claims and demands. The provisions of this section are remedial in character, and ought to be liberally and beneficially construed.

3. Alimony, as allowed by the ecclesiastical law in England prior to the statute there of 1858, was confined to cases of divorce *a mensa et thoro* and being allowed for the continuance of the separation, and with refer-, ence to a reconciliation, was given in the form of periodical payments of income, and not of a gross sum in full of future claims. The nature and principles of the provision due to the wife under our statute, where the misconduct of the husband drives her to obtain a divorce from the matrimonial bond, are essentially different from those of the provision allowed by the ecclesiastical law in cases of limited divorce.

4. The husband having deserted his wife, who had contributed to the earning and accumulation of his property, and while living in an adult-erous connection in another state, to which he had taken the most of his property, proposed to make over to his wife, who remained here, certain property in this state, and to pay also the sum of $2000, as her portion, upon a separation between them; which offer, being accepted by the wife, he refused to fulfill. Upon a bill for divorce, and for alimony and maintenance, his own estimate and offer were adopted by the court as the guide of its judgment in regard to the amount and kind of provision to be allowed to the wife, and a decree was made accordingly for the conveyance of the property and the payment of the money.

*Mr. Leonard,* for complainant.

*Mr. Stone,* for defendant.

THE VICE-CHANCELLOR.

The complainant seeks a divorce from her husband, the defendant, for the cause of desertion, together with adultery. She asks, also, that a certain portion and description of his property be decreed to her as a provision for her future support, and in lieu of all future claims. The amount of property she seeks to have awarded her, is the sole matter of dispute. The desertion and adultery are proved by plenary evidence, and cannot be denied.

The parties were married in January, 1848, in Switzerland, their native country, and are, respectively, about forty-five years of age. They have had but one child, and that is now dead. They came to this country in 1849, and settled in Newark, where he worked at his trade as an engraver of jewelry. She was skillful and ready, and worked with him when not engaged in the work of the family, and by their united industry, they acquired, in 1853, a small property in Mulberry Place, consisting of a house and shop, with some furniture, fixtures, and tools, worth about $2000 or $2500. They were prosperous, and accumulated money. In 1858, they visited Switzerland, and before going, conveyed to Justin Calame, his brother, the Newark property, for the consideration of $2000, as expressed in the deed. He gave back a bond and mortgage for nearly all of the price. The conveyance, though absolute on its face, was only provisional, and after their return, the defendant refunded to Justin his advances and payments, and the latter is now a party to the suit, because the holder of the title. He has testified as a witness, and admits that he has no beneficial interest or estate in the premises, and holds them simply for his brother. The bond and mortgage which he gave as above, are still in his possession, uncanceled of record.

In 1864, or thereabouts, the defendant, who had contracted

and was living in dissolute habits, deserted the complainant, and went west with a woman he has since lived with as his wife, and whom, after a pretended divorce, procured there without the knowledge of the complainant, he claims to have married, and is living with in St. Louis, where he is a partner in a firm, doing business as jewelers. At his desertion, in 1864, all his property except the Newark premises and appurtenances, was personal, and he took it all with him, leaving his wife in possession of the property in Newark. The value of what he took with him, was $10,000, at least. His brother Justin testifies to the last mentioned sum, and the complainant testifies to her belief that it was very much more. Justin says they consisted of money and bonds. For several years, the complainant knew nothing of his whereabouts, but received, afterwards, through Justin, occasional remittances of money, the precise amount of which does not distinctly appear, nor is it material to be known. The remittances were discontinued, and thereupon a separation, together with a provision for her in full, was proposed by him in writing, through Justin, by which proposition she was to have the Newark property and $2000 in money. "If you will not accept," he wrote, "it is unnecessary to answer me ; if you accept, you will send your answer with Justin, whom I shall instruct to receive it." She objected at first, to the amount, as insufficient and unfair, but afterwards accepted his offer. The defendant then delayed, and refused to fulfill it, and the complainant, having gone to St. Louis to see him, and secure its fulfillment, was coarsely repulsed.

To her bill now exhibited against him and against Justin, praying for a divorce and for a conveyance or transfer of the Newark property, and for the payment of the sum of $2000, neither defendant has answered, pleaded or demurred. An appearance was entered, and evidence on both sides has been taken. On the part of the defendant, the evidence and argument were confined exclusively to the question of amount, and were directed to show that the defendant's property and means are not sufficient to justify so liberal a provision as the provi-

sion he offered. No question was raised or suggested as to the power of the court to decree the conveyance of the property and the payment of the money, as prayed for in the bill, nor was it insisted that at the time the offer of such conveyance and payment was made, the offer was too large, in view of what the defendant then had ; but the point insisted on was, that since the offer was made, the defendant's circumstances have changed, and his pecuniary ability been diminished. But this point is altogether unsustained by the proofs. The defendant was sworn for himself, and in testifying before the commissioner in St. Louis, he speaks of his property and affairs as if seeking to produce the impression that, by losses incurred, his means are now less than when he made his own estimate of what part of his property his wife was entitled to receive, but he avoids saying so in terms, and I have no doubt, from his testimony, that his means are at least as great as they were when his offer was made. The amount offered was less, probably, than the value of one-third of his estate—perhaps less than one-fourth—and was proposed in consideration of what he was well aware were his wife's circumstances and situation, and of the share she had had in the earning and accumulation of whatever means he possessed. He intended it as a provision in full for her future support, and of all further claims. It will be the only provision to which she will be legally entitled from him or his estate, after obtaining her divorce. The divorce will deprive her of dower and of all right to any part of his estate at his death. The question then presented by the evidence and the argument is, should the defendant's estimate of what was proper and right, when his offer was made, be held now, from any alleged change of his circumstances, to be excessively large? There can certainly be no difficulty in coming to the decision that it should not.

As I have already said, the power of the court to decree the conveyance and payment, was not denied or drawn in question at the argument. I do not doubt that the power exists, and is conferred by the act concerning divorces, *Nixon's*

Calame v. Calame.

*Digest,* (*4th ed.,*) 247.   The bill seems to claim that, by virtue of the written offer of the husband, and the acceptance of it by the wife, a contract arose which this court should specifically enforce; but the decree I shall advise will be upon the ground that the division of the property agreed on by the parties, was no more than was due to the wife under the facts of the case, and that their joint judgment in regard to it then, should be adopted now by the court in determining the amount and description of property which, under the statutory enactment touching alimony and maintenance, it is the right and the duty of the court, when decreeing an absolute divorce for the misconduct of the husband, to secure for the benefit and protection of the wife.   In such cases I do not doubt the power of the court, under the statute referred to, to decree a sum in gross to be paid, instead of the periodical sums which, under the name of alimony, are allowed where the divorce is only qualified and limited—where it is merely a separation, and not a dissolution of the marriage relation. In the ecclesiastical law, as it existed in England prior to the statute there of 1858, no divorces from the matrimonial bond were decreed by the courts.   All divorces, so decreed, were only from bed and board, and whatever provision was made by the courts for the wife, while the separation continued, was made with a reference to a probable or possible reconciliation, and was not meant to discourage it.   Hence, alimony, as a general term, if not restricted in meaning to stated allotments of income, was yet a provision which, in point of fact, was made in that class of cases by payments from time to time, and not at once and in full of all future demands.   It could not well be, and certainly did not need to be the latter. But where the divorce, as under our law, is unqualified and absolute, and the wife is no longer the wife, and no longer holds her dower or other interest in the property of the husband, to be asserted in his life or at his death, the nature and principles of the provision to be made for her rights by the courts, are essentially and radically different.   If the word alimony, without the word maintenance, were made use of in

statutory enactments for absolute divorces, a broader and juster meaning would attach to it than the meaning which the ecclesiastical law, by its limited operation in divorces, has in England assigned to that word. But it must not be overlooked that the word maintenance is added, and is regarded as of less technical and broader significance than alimony.

"There are," says Bishop, on *Marriage and Divorce, Vol.* 2, § 481, "some plain propositions of common sense governing this matter of alimony, on a divorce from the bond of matrimony, as follows : *First.* The innocent party should not be left to suffer pecuniarily for having been compelled, by the conduct of the other, to seek the divorce. *Secondly.* The wife made thus in a certain sense a widow, should not usually be set back simply where she stood in point of property when she entered the marriage. She has given her time, her virginity, her earlier bloom, where she has been rewarded only with ill faith in return for her faith. *Thirdly.* She should not stand worse than if death, instead of divorce, had dissolved the connection."

By the statute of this state above cited, the Court of Chancery is empowered to decree both kinds of divorce : from the bond of matrimony, and from bed and board. Following the sections describing and authorizing these different kinds, is the ninth section, giving power to the court to make provision for the wife such as each of these kinds shall require. It does not distinguish for this purpose, but includes both under the general name of divorce. It authorizes the court "to take such order touching the alimony and maintenance of the wife by the husband, as from the circumstances of the parties and the nature of the case shall be fit, reasonable, and just." It provides methods for enforcing decrees for periodical payments, where the divorce is only a separation, and provides also, in general terms, for all that is needed to enforce the collection of a commuted or gross sum, or the transfer or conveyance of a specific and definite portion of property, suited to the necessities and rights of a wife aban-

doned and injured, as in this case, by a husband, who, with-
drawn from the jurisdiction of the court, has nothing within
reach of its process but property whose rents and profits
would be wholly inadequate to yield her a support.  The
section is comprehensive of ends and of methods by which
in every case the decree of the court can be efficient to meet
the equities presented, so far as property can be discovered
and reached.   It enacts that security may be taken, the per-
sonal estate of the husband sequestered, together with the
rents and profits of his real estate, and a receiver appointed
to collect and apply them.   Besides the methods thus speci-
fied, orders and decrees for alimony and maintenance may be
enforced by such other lawful ways and means as are usual
and according to the course and practice of the court.   The
ample and necessary powers which this statute confers' are
not derived by inference or construction, but are plainly ex-
pressed.   If inference were needed, the section is highly
remedial in character, and ought to be liberally and benefici-
ally construed.   Under it, as by the usual course and prac-
tice of the court, real estate may be ordered to be sold or the
defendant be decreed to convey.   Its provisions are well
adapted to meet the exigencies of a hard and exceptional case
like the present.

In Illinois and Missouri, the statutory words authorizing
orders for alimony and maintenance are nearly identical, and
in meaning and effect are the same, with the words of the
ninth section of the statute of this state ; and by virtue of the
power which the statutes of those states bestow, a gross sum
amounting to one-fourth of the husband's estate was, in *Plas-
ter* v. *Plaster*, 47 *Ill.* 290, allowed in lieu of other payments,
and was held to be in discharge of all further claims of the
wife to a future support.   In *Schmidt* v. *Schmidt*, 26 *Missouri*
235, it was held, that in the allowance of alimony the court
is not restricted to the income of the husband, and that such
a principle would in many cases deprive the wife of alimony
entirely.   See also *Bishop on Divorce, Vol. II, Chap.* 27.

I am satisfied that the power exists to afford in this case

Calame *v.* Calame.

the relief which reason and justice demand, and shall advise a decree for the conveyance and transfer of the Newark property and the payment of $2000, in full discharge of all future demands for alimony and maintenance, in accordance with the prayer of the bill. The bond and mortgage on the premises, which were executed by Justin, should be given up to be cancelled.